Mr. Chief Justice Maushall
delivered, the opinion of the Court. — ■
This is a writ of error, to a judgment of the United States’ Circuit Court,' of the district -of- Columbia, for the county of Alexandria. ■ .
On the 19th of June 1817, Wiliam H. Briscoe,, of Alexandria, drew a bill on Peter A. Carnes, of Washington, payable four months after date, to the.order of Triplett & Neale. The payees of the bill, endorsed it in blank., and delivered it to the Cashier of the Mechanics Bank of Alexandria, for the. purpose of being transmitted, through the said. bank,, to a bank . in Washington, for collection. ■ ■
The Cashier of the Mechanics Bank of Alexandria,•- en-r dorsed the bill, to the order of the Cashier of the -Bank of Washington, arid transmitted it to him, for collection, in a *29 letter of the 19th of July 1817. Neither of the banks had any interest in the bill.
• ■ The bill was protested, for non-paymentand this suit ■was brought .by Triplett ifc Neale, against the Bank of Washington, to recover its-amount. The declaration charges, that the batik did not- use' reasonable diligence to collect the money mentioned in the said bill, nor take • the necessary measures to charge -the drawer ; but neglected to present the bill either for acceptance, or payment; and to have the same- protested ; whereby the plaintiffs have lost their recourse against the drawer.
It was proved,- on the part of the bank; that either on the day. the bill was received, or the succeeding day, one of its officers called with the bill, at the house of the said Peter A. Carnes, for the purpose of presenting it for acceptance, and-was told, that he was in Baltimore. He called again, three or-four days afterwards, for the same purpbse; and"was again '•-told,, that- he was in Baltimore.' These answers were reported. to thie Cashier.
-On the 9th of October 1817, the Cashier of the Mechanics Bank of Alexandria, addressed the following letter to the Cashier of the Bank of Washington— .
“Dear Sin,.
. “ The holder of the draft on Peter A. Carnes, for 625- dol-'. lars '34 cents, desires me to inform- you; that if the draft-is not paid, -to make' the notary send, a notice tó P. A. Carnes, Baltimore,' and likewise to W. H. Briscoe, Leesburg, provided it is not paid at his residence, in Washington.” On the.. •13th of the same month, the Cashier of the Bank of Wash*' ington, -in answer to this letter, stated that the bill had not been accepted, because the. drawee could not be found; and that the directions - given, in the letter o£ the 9th, should be observed. -On the' 24th -of October, the fourth day after that expressed on the face of the bill, as the day of payment, it was protested, for non-payment, and- returned;' under protest, to the Mechanics Bank of Alexandria.; Notice was given to th“, di..wer, who has refused to pay the same.
On the trial,- the counsel for the defendant, moved the Court, to instruct the jury s — r
1st. That Upon this evidence, if believed, the plaintiffs are not entitled to recover.
2d. That the plaintiffs are not entitled to recover, for any loss of recourse against Briscoe, the’.drawer, of the sáid bill.
3di That the'failure of the • defendants, (after having failed at the residence of dhe drawee of the'said bill, to Obtain his acceptance, and not-fiiiding him; or afey person there to accept it,)' to notify the drawer of that circumstance,. was not *30 such negligence, as discharged the said drawer, from his liability, on the said bill, and entitles the plaintiffs to recover.
4th. That if they believed, from the evidence, that the defendants conformed to their former usage, in regard to such bills, as the one in question, in calling on the drawee for acceptance, (the said drawee being from home,) and hot noting the same as dishonoured, and giving notice thereof to the parties, on the said bill; then their failure to treat the said bill as dishonoured, and to give notice accordingly, of non-acceptance, did not discharge the drawer thereof, from his liability to the plaintiffs.
The Court refused to- give either of these instructions; to which refusal, the counsel for the defendants excepted; and a verdict and judgment were rendered for the -plaintiffs.
The plaintiffs in error, insist,’ that the Circuit Court ought to have given the'instructions first asked, because, 1st, no pri-vity existed, between the real holder of the bill, and the Bank' of Washington. That bank was not the agent of Triplett & Neale, but was the agent of the Mechanics Bank of Alexandria. Some cases have been cited, to show, that if an agent employed to transact a particular business,’ engages another person todo it, that other'pcrsoniS not responsible to the principal. On this point, it is sufficient to say, that these cases, however correctly they may have been decided, are inapplicable to the case at bar. The bill was not delivered to the Mechanics Bank of Alexandria, for collection, but for transmission to some bank in Washington, to be collected.- That bank would, -of course, become the agent of the holder. By transmitting the bill, as directed, the Mechanics Bank performed its -duty, and the whole responsibility of collection devolved on the bank which .'received the bill for that purpose; the Mechanics Bank was the mere channel through which Triplett & Neale, transmitted the bill to. .the Bank of Washington.
The deposit of a bill in one bank, to be transmitted for collection, to another, is a common usage of great public convenience, the effect of which is well understood. This trans-iaction was, unquestionably, of that character; ánd there is'no-reason for suspecting that the Bank of Washington did not so understand it The duty of that bank,. was precisely the same, whoever might be the owner of the bill; and, if if Was unwilling'to undertake the collection, without precise information on the subject, that duty ought to have been declined.— The custom to endorse, a bill put in bank, for collection, is ~ universal; and the'.Bank of Washington, had no more reason for supposing that''Triplett. & Neale had ceased to' be the real holders, from their endorsement, than for supposing that the *31 Cashier of the bank1 ,of Washington, had' become the real holder, by the; endorsement to them. It is the customary proceeding, .for collection,'in. such cases;',and is for the adyan* tage of the'.party interested. At' any rate, the letter of the 9th of October, disclosed:the- real party entitled to the money; and the. answer to that letter, assumes'the agency,- if it had'not been previously assumed. The Court is decidedly of opinion, that the Rank' of Washington, by receiving the bill, for collection, and, certainly, by its letter óf the-..13th- of October, became the agent of Triplett .&■ Neale, and assumed the- responsibility attached to that character.
' The first prayer of - the defendants, ; in the Circuit’ Court, being to instruct .the jury, that, upon the'whole evidence, the-■plaintiff -ought hot to-recover; if it,might properly have been-granted, -in any case, in wh,ich any testimony Was offered; Certainly ought not to have, been granted, if any possible 'construction of that testimony woyld support the action.
The liability of-the bank,, for the bill placed in its hands for collection, undoubtedly depends on the question, "whether reasonable and' due diligence has been used; in the. performance of its duty. To maintain the chárge' of negligence, thecotfn-sel for Triplett & Neale, have alleged the failure to give notice of the non-acceptance of the-bill, and the failure to demand payment in'proper time. The counsel for the bank, have brouglit the first question more distinctly'into view,, by. a more definite-' instruction respecting it,' which was afterwards asked; and its. consideration will be deferred,- until that prayer shall be discussed ; but the first must be disposed of,-under thé general prayer.
Unquestionably, by failing to demand payment in time, the bank would make the bill, its own, and would-become liable tó ■ Triplett-Sc Neale-for its. amount. The inquiry, therefore,'is into .the fact'.-
The demand was made, on the fourth. day after that -mentioned on the face of the bill, as the day of payment.-
The- defendants in error,' insist, that, if the bill was never presented for acceptance; -payment ought to have been demanded, on the day mentioned on its face. -If this be not so, then it ought to’have- been demanded, On the third day afterwards, which-’is the last day of gracél -
The allowance of days'of grace, is a Usage; which pervades the whole commercial world. It'is now universally'understood- to enter into every bill, or nóte,' of á mercantile character, and; to form so completely a part of the contract, that the bill-does not become due, in fact, or in -law, on the day mentioned on its .face, but on the last day. of grace. A demand of payment, previous, to that day, will not-authorize a protest, or charge the draw'er of the-bill.. ’
*32 This is- universally admitted, if the bill has been accepted.
If it. has been, noted,; for non-acceptance, but has been held up, it would not. be'protested,-for non-payment, until the last, day of grace. Why, then, should a bill never presented, be demandadle, át an earlier’ day, than if it had been accepted; or if acceptance had been refused ?' • Whatever might have been the- original motive for the indulgence, it is now taken inte consideration, both by.-the drawer and’ payee of the bill. The amount is, consequently, estimated, on the calculation, that it becomes really, due, on the last day of; grace, Neither party can foresee, when fhe bill is. drawn,'whether.it will be. paid, or- not; nqr, if it be payable, after date, whether it will be-presented, or not'. Th.eir. calculation, therefore, as to., the day wheinr it becomes, really due, and is to- be paid,,'is independent of these considerations': No - sufficient reason is perceived, fpr the distinction.
. .It is, However, a lavf dependent on- usage. The books which treat on. the'Subject,' concur in' saying,, that payment riittst be. demand.ed when the bill falls due; and that it falls-due,' on. the1 last ..day of.grace. The distinction between a bill which has, and which has- not been presented, has never been taken; and it is apparent,,that'a bill 'is-never -drawn, with a view to -this distinction. - .The fact,'that the question'has. • never -been-made,. is a strong, argument against it. ■ The point ■ hush ever,. so far as we can find,' been' brought directly.before a Court; and we have seen .only one cáse, in which it has been even. ihpid,entally mentioned,'
In Anderton vs. Beck & Pearson, 16 East 248, a bill was drawn;'payable, two months after ..date, and was not presented for acceptance.-. ' It was, protested for nonpayment, an,d a suit was brought by the.holder against- the drawer. ; He resisted the deihatid, and the opinion-of the "Court proceeds oh the. admission, that the bill fell'due oh the last day of gracel This casé consists,, we believe,'. with the . opinions and practice of commercial towns. .
. But if a bill, payable after ;da.te;and'not presented' for acceptance, .falls due on'the-, saíne day as. -if it had been accepted, ■the defendants in error, insist-,-that payment ougiit to have been demanded on the last, day of grace.
Itwas provéd .at' the trial; that the; settled usage of the',Bank of Washington, at that., time;, and of all’the- other banks in', Washington and Georgetown, was, to demand payment on the day Succeeding the last day of grace;' and this usage, so far-as respects notes- negotiable in' a. particular, bank, has been sanctioned by-the decisions .'of this. .Court. Renner vs. the Bank of Columbia, 9 Wheat. 582, was a suit brought in a Circuit CoUrt of the Distri'ct of Columbia, against the endorser of a *33 promissory note, which had been negotiated in the Bank of Columbia. • Payment was demanded, and the note protested on the fourth day after that mentioned in the note as the day on which it became payable. This was proved to have been in conformity' with the custom of the Bank; and the defendant moved the Court to instruct the jury that the demand was not in time, and that the endorser was not liable for the note.— This instruction was refused, and the defendant brought the judgment into this Court by writ, of error. The judgment, on great deliberation, was affirmed.'
In this case,' the custom of the Bank was known to the parties to the note. But the question arose afterwards, in a case in. which the custom was not known to the parties. Mills vs. The Bank of the United States, 11 Wheat. 430, was-a suit brought by the Bank against the plaintiff in error, and others, on a note endorsed by him, and negotiated in the office of discount and deposit of the Bank of the United States, which was protested, for non-payment, on the day of the last day of grace.
It was proved at the trial, that this was according to the usage of that .Bank. The counsel for the defendant moved the Court to instruct the jury that this usage could not bind the endorser, unless he had personal knowledge of it, at the time .he endorsed the note. The Court Refused to give the.instruction, and the jury found a verdict for the Bank, on which judgment was rendered. That judgment was brought before this Court, and affirmed. The Court Said, that “ when a note, ■ is made payable or negotiable at a Bank,, whose invariable usage it is to demand payment, and give notice on the fourth day bf-grace, the parties are bound by that usage, whether they have a personal knowledge of it, or not5J
In the case of such a note, the parties are presumed, by implication, to agree to be governed by the usage of- the Bank, at which they have chosen to make the security itself negotiable. - -
These cases decide ■ that .under consideration, unless there be a-distinction between- a bill and a note made.negotiable in a- particular bank. In the case of a note negotiable in a particular bank', the parties may very ;fairly be presumed to be acquainted with the usage of that bank. As the decisions which ■ have been cited, depend upon -that presumption, it will become necessary to inquire, how far the same presumption may be..justified.'in the case of,a bill drawn on a person residing in'a place where this usage is established., . ■ ;
If a promissory note were made in. the city of Washington, .payable to a. person residing jh the same place, though not purporting to be payable and negotiable in bank, it would very probably be placed in a bank, for collection. It isa common *34 practice, and' the parties would contemplate such an event as probable, when the note was executed.
The samé reason seems1 to exist for applying the usage of the bank, to such a noté, as to one expressly made payable and negotiable-in bank. Such notes are frequently discounted,/ and .certainly the person who discounts .'them, .or places them in„bank 'for collection,- stands in precisely, the same relation to the bank, las respects its. usage, as ■ if the notes purported on their face to be negotiable in bank. -The maker of a negotiable |>aper, in such, a case, may fairly be: presumed to be ac.qUaróted'With the customary law'.which governs that paper, at his'place of Residence.
' In thé,case, at bary however,'the bill Was drawn-at Alexandria, on a. person résiding. at Washington. ' Doesthiscircum-stancé vary the law,of the case?
■ The usage, by which question's of this sort áre governed,, is different, in, different places. It-varies from three to thirty days- — and' the usage of the place-on'which the. bill is drawn,qr where payment is1.to be demanded, uniformly regulates the number-of days-of'grace'.-which must be allowed. This bill being drawn on .a'person...residing in Washing-ton,'and .being protested for non-payment in the. sanie place, is, according to the law merchant, to- be- governed by the usage of. Washington. Qould.-this.be questioned, still-thé holder of the bill, who placed it, by' his'agent, in tííe Bank óf Washington for collection,/who has. made that bank his. agent, without special instructions,., submits' his.bilí to théir established usage,. The cases, then,-which have been cited, aré hot different in principle from" thi&T-and,"payment having, befen demanded, according to-the invariable, iiságe of the Lank, was. dematided in timé. If .then , the/,objéctions. tó "the .conduct of the Bank were confined to. the demand of -payment,' and protest fpr non-payment,, the first instruction asKfeu' by the.defendahts,in ,the Circuit .Cptirt, ought to' tiáyéhaen given.; But 'they are not confined to.the demand of payment'and to tne protest for non-payment. They' extend'to thé steps taken by thefiank, concerning the presentation ofthebill.,
.. Thé -second instruction asked .fpr, is-iñ terms which are m .some: degree equivocal. It may-imply,' either, that the ¡recourse against (hfr drawer of the ¡bill was. hot lost,- or that if lost, -.that circumstance would" not entitle the. plaintiff to recover ágáihst the Bank -; as its decision is hot essential to thé cause, it -will be passed over.
. The third,is more specific. .The'Cóúrt is.ásked to sayy that the-faijárré of the',Bank to give ñotiefe to the drawer,/ that the drawee ,was njot foüñd at home, when.' .called . upon to- accept *35 the bill, is not such negligence as discharged the drawer from his liability, and entitles the plaintiff to recover:
The question suggested by. this prayer, is one on which no decision is found in the Books.; It-.depends on . analogy, so far as it is to-be decided-by adjudged cases. Such .a bill need not be presented; but if presented, and acceptance be refused, it is; dishonoured, and notice must be given. Had the Bank taken no step whatever to obtain an acceptance,' no violation of duty, would, according to these decisions,' have been committed.— Can any- unsuccessful attempt to do that which the law does not require, place the agent in the same situation that he would have stood in, had the drawee been.found, arid had posi-' lively' refused ■ acceptance? Absence-from home, with a failure to make provision fór; payment when á bill becomes due, is a failure to pay; but absence from home.when the holder of a.bill or his agent offers it for' acceptance,, is in ño‘respect culpable. Had the drawee, received advice of the bill,. he could not have-not known, that it' would be presented for acceptance, because the.law did not require it, and is conse-quently not blameablé for-his . absence, when ,the officers of the Bank came to present it-for acceptance. ■ .Had thé blll, un-', dér such circumstances, been'protested for non-acceptance, and returned, the drawer migh't.not have, been'liable for it.
The bill,- then, on general ¡principles, ought not to have; been protested;, and .the absence of the drawee, ought not to be considered as equivalent .to'his refusal to" accept: It- might' have been-a prudent precaution, to ' have'given'. information; ■that the bill was-not accepted, because the drawer had riot been found., but'we cannot say, that the omission would-subr!' ject the agent to loss, unless such was. the special usage of this .bank.-
4. The fourth prayer is. for an-instruction to the jury, that, if they believe, -from thé evidence,, that the. defendants conformed. to. their former usage, in regard to such bills, in calling on 'the drawee for acceptance, (the. said- drawee being from home’,) and not noting the same as' dishonoured; and giving, notice thereof to the parties on the said bill, then, their failure to treat the said bill-as dishonoured,-and-to-give notice, accordingly, of'non-acceptance, did not discharge the'drawer thereof,'from his liability to .the'plaintiff
The Court has already indicated the opinion, that this omission to treát the bill as dishonoured, in consequence of not .finding the drawee-at home, if the usage of the bank was. not. to notice such a circujnstarice, did-not discharge the drawer;‘ consequently, this instruction ought to háve been given, unless it should be supposed foreign to the cas.e in - which it was asked. In ,a suit -brought by the holder against the bank, the *36 Court was not bound to declare the law as between the holder and the drawer, unless the liability of the bank was determined, by-the liability of the drawer. Although in the general, the one question depends on the other, yet, it may not be universally so. The bank-was the agent of the holder, not of the draw - er, and might' consequently so act, as to discharge the drawer, without becoming, liable to its principal. In this case, however, as the agent received on specific instructions, but was left to act according to the law merchant; a course- of proceed- ■ ing which did not discharge the drawer, could not render the agent liable to the principal. This prayer was, therefore, essentially the-same with that which preceded it, with this difference. The third prays an instruction, whatever might be the usage of.the bank; the fourth prays essentially the same instruction, provided the conduct of the bank conformed to its usage. This instruction, therefore, ought- to have been given, as prayed. Upon a review of the' whole case,'the Court is of opinion, that, if the- bank acted in conformity with its established usage, in not noting the bill, and giving notice thereof, when the ineffectual attempt was made to present it for acceptance, this action could not be supported. With respect to this usage, the testimony is contradictory, and ought to have been submitted to the jury, in conformity with the last prayer made by the counsel for the bank. The Court erred, in not giving this instruction, as prayed. The judgment, therefore, is to be reversed, and the case remanded for a new trial.
This cause came on,, &c., on consideration whereof, — This Court-is of opinion; that the Circuit Court erred, in refusing ■to instruct the jury., that if they believed that the defendants conformed to- their former, usage, in regard to such bills as the one in' question',, in calling on the drawee for acceptance,- ,(the said drawee being from home,)'and not noting the same as dis-honoured, and giving notice thereof to the parties on the said bill, then, their failure to treat the- said bill as dishonoured, and to'give notice accordingly, of non-acceptance, did not discharge tlié drawer thereof from his-liability to the plaintiffs.— It is therefore considered by the Court, that the said judgment be reversed and annulled, and that the cause be remanded to the said' Circuit Court, with directions to award a venire facias de novo, and -to proceed therein according to law. , .