26 U.S. 25 (____)
1 Pet. 25
THE PRESIDENT AND DIRECTORS OF THE BANK OF WASHINGTON, PLAINTIFFS IN ERROR,
vs.
PHILIP TRIPLETT AND CHRISTOPHER NEALE, TRADING UNDER THE FIRM OF TRIPLETT & NEALE, DEFENDANTS IN ERROR.
Supreme Court of United States.

*27 Mr. Key, for the plaintiffs in error.
Mr. Jones, for defendants in error.
*28 Mr. Chief Justice MARSHALL delivered the opinion of the Court. 
This is a writ of error, to a judgment of the United States' Circuit Court, of the district of Columbia, for the county of Alexandria.
On the 19th of June 1817, William H. Briscoe, of Alexandria, drew a bill on Peter A. Carnes, of Washington, payable four months after date, to the order of Triplett & Neale. The payees of the bill, endorsed it in blank, and delivered it to the Cashier of the Mechanics Bank of Alexandria, for the purpose of being transmitted, through the said bank, to a bank in Washington, for collection.
The Cashier of the Mechanics Bank of Alexandria, endorsed the bill, to the order of the Cashier of the Bank of Washington, and transmitted it to him, for collection, in a *29 letter of the 19th of July 1817. Neither of the banks had any interest in the bill.
The bill was protested, for non-payment; and this suit was brought by Triplett & Neale, against the Bank of Washington, to recover its amount. The declaration charges, that the bank did not use reasonable diligence to collect the money mentioned in the said bill, nor take the necessary measures to charge the drawer; but neglected to present the bill either for acceptance, or payment; and to have the same protested; whereby the plaintiffs have lost their recourse against the drawer.
It was proved, on the part of the bank, that either on the day the bill was received, or the succeeding day, one of its officers called with the bill, at the house of the said Peter A. Carnes, for the purpose of presenting it for acceptance, and was told, that he was in Baltimore. He called again, three or four days afterwards, for the same purpose; and was again sold, that he was in Baltimore. These answers were reported to the Cashier.
On the 9th of October 1817, the Cashier of the Mechanics Bank of Alexandria, addressed the following letter to the Cashier of the Bank of Washington: 
"DEAR SIR,
"The holder of the draft on Peter A. Carnes, for 625 dollars 34 cents, desires me to inform you, that if the draft is not paid, to make the notary send a notice to P.A. Carnes, Baltimore, and likewise to W.H. Briscoe, Leesburg, provided it is not paid at his residence, in Washington." On the 13th of the same month, the Cashier of the Bank of Washington, in answer to this letter, stated that the bill had not been accepted, because the drawee could not be found; and that the directions given, in the letter of the 9th, should be observed. On the 24th of October, the fourth day after that expressed on the face of the bill, as the day of payment, it was protested, for non-payment, and returned, under protest, to the Mechanics Bank of Alexandria. Notice was given to the drawer, who has refused to pay the same.
On the trial, the counsel for the defendant, moved the Court, to instruct the jury: 
1st. That upon this evidence, if believed, the plaintiffs are not entitled to recover.
2d. That the plaintiffs are not entitled to recover, for any loss of recourse against Briscoe, the drawer of the said bill.
3d. That the failure of the defendants, (after having called at the residence of the drawee of the said bill, to obtain his acceptance, and not finding him, or any person there to accept it,) to notify the drawer of that circumstance, was not *30 such negligence, as discharged the said drawer, from his liability, on the said bill, and entitles the plaintiffs to recover.
4th. That if they believed, from the evidence, that the defendants conformed to their former usage, in regard to such bills, as the one in question, in calling on the drawee for acceptance, (the said drawee being from home,) and not noting the same as dishonoured, and giving notice thereof to the parties, on the said bill; then their failure to treat the said bill as dishonoured, and to give notice accordingly, of non-acceptance, did not discharge the drawer thereof, from his liability to the plaintiffs.
The Court refused to give either of these instructions; to which refusal, the counsel for the defendants excepted; and a verdict and judgment were rendered for the plaintiffs.
The plaintiffs in error, insist, that the Circuit Court ought to have given the instructions first asked, because, 1st, no privity existed, between the real holder of the bill, and the Bank of Washington. That bank was not the agent of Triplett & Neale, but was the agent of the Mechanics Bank of Alexandria. Some cases have been cited, to show, that if an agent employed to transact a particular business, engages another person to do it, that other person is not responsible to the principal. On this point, it is sufficient to say, that these cases, however correctly they may have been decided, are inapplicable to the case at bar. The bill was not delivered to the Mechanics Bank of Alexandria, for collection, but for transmission to some bank in Washington, to be collected. That bank would, of course, become the agent of the holder. By transmitting the bill, as directed, the Mechanics Bank performed its duty, and the whole responsibility of collection devolved on the bank which received the bill for that purpose; the Mechanics Bank was the mere channel through which Triplett & Neale transmitted the bill to the Bank of Washington.
The deposit of a bill in one bank, to be transmitted for collection, to another, is a common usage of great public convenience, the effect of which is well understood. This transaction was, unquestionably, of that character; and there is no reason for suspecting that the Bank of Washington did not so understand it. The duty of that bank, was precisely the same, whoever might be the owner of the bill; and, if it was unwilling to undertake the collection, without precise information on the subject, that duty ought to have been declined.  The custom to endorse a bill put in bank, for collection, is universal; and the Bank of Washington, had no more reason for supposing that Triplett & Neale had ceased to be the real holders, from their endorsement, than for supposing that the *31 Cashier of the bank of Washington, had become the real holder, by the endorsement to them. It is the customary proceeding, for collection, in such cases; and is for the advantage of the party interested. At any rate, the letter of the 9th of October, disclosed the real party entitled to the money; and the answer to that letter, assumes the agency, if it had not been previously assumed. The Court is decidedly of opinion, that the Bank of Washington, by receiving the bill, for collection, and, certainly, by its letter of the 13th of October, became the agent of Triplett & Neale, and assumed the responsibility attached to that character.
The first prayer of the defendants, in the Circuit Court, being to instruct the jury, that, upon the whole evidence, the plaintiff ought not to recover; if it might properly have been granted, in any case, in which any testimony was offered; certainly ought not to have been granted, if any possible construction of that testimony would support the action.
The liability of the bank, for the bill placed in its hands for collection, undoubtedly depends on the question, whether reasonable and due diligence has been used, in the performance of its duty. To maintain the charge of negligence, the counsel for Triplett & Neale, have alleged the failure to give notice of the non-acceptance of the bill, and the failure to demand payment in proper time. The counsel for the bank, have brought the first question more distinctly into view, by a more definite instruction respecting it, which was afterwards asked; and its consideration will be deferred, until that prayer shall be discussed; but the first must be disposed of, under the general prayer.
Unquestionably, by failing to demand payment in time, the bank would make the bill its own, and would become liable to Triplett & Neale for its amount. The inquiry, therefore, is into the fact.
The demand was made, on the fourth day after that mentioned on the face of the bill, as the day of payment.
The defendants in error, insist, that, if the bill was never presented for acceptance, payment ought to have been demanded, on the day mentioned on its face. If this be not so, then it ought to have been demanded, on the third day afterwards. which is the last day of grace.
The allowance of days of grace, is a usage, which pervades the whole commercial world. It is now universally understood to enter into every bill, or note, of a mercantile character, and to form so completely a part of the contract, that the bill does not become due, in fact, or in law, on the day mentioned on its face, but on the last day of grace. A demand of payment, previous to that day, will not authorize a protest, or charge the drawer of the bill.
*32 This is universally admitted, if the bill has been accepted.
If it has been noted, for non-acceptance, but has been held up, it would not be protested, for non-payment, until the last day of grace. Why, then, should a bill never presented, be demandable, at an earlier day, than if it had been accepted, or if acceptance had been refused? Whatever might have been the original motive for the indulgence, it is now taken into consideration, both by the drawer and payee of the bill. The amount is, consequently, estimated, on the calculation, that it becomes really due, on the last day of grace. Neither party can foresee, when the bill is drawn, whether it will be paid, or not; nor, if it be payable, after date, whether it will be presented, or not. Their calculation, therefore, as to the day when it becomes really due, and is to be paid, is independent of these considerations. No sufficient reason is perceived, for the distinction.
It is, however, a law dependent on usage. The books which treat on the subject, concur in saying, that payment must be demanded when the bill falls due; and that it falls due, on the last day of grace. The distinction between a bill which has, and which has not been presented, has never been taken; and it is apparent, that a bill is never drawn, with a view to this distinction. The fact, that the question has never been made, is a strong argument against it. The point has never, so far as we can find, been brought directly before a Court; and we have seen only one case, in which it has been even incidentally mentioned.
In Anderton vs. Beck & Pearson, 16 East 248, a bill was drawn, payable two months after date, and was not presented for acceptance. It was protested for non-payment, and a suit was brought by the holder against the drawer. He resisted the demand, and the opinion of the Court proceeds on the admission that the bill fell due on the last day of grace. This case consists, we believe, with the opinions and practice of commercial towns.
But if a bill, payable after date, and not presented for acceptance, falls due on the same day as if it had been accepted, the defendants in error insist, that payment ought to have been demanded on the last day of grace.
It was proved at the trial, that the settled usage of the Bank of Washington, at that time, and of all the other banks in Washington and Georgetown, was, to demand payment on the day succeeding the last day of grace; and this usage, so far as respects notes negotiable in a particular bank, has been sanctioned by the decisions of this Court. Renner vs. the Bank of Columbia, 9 Wheat. 582, was a suit brought in a Circuit Court of the District of Columbia, against the endorser of a *33 promissory note, which had been negotiated in the Bank of Columbia. Payment was demanded, and the note protested on the fourth day after that mentioned in the note as the day on which it became payable. This was proved to have been in conformity with the custom of the Bank; and the defendant moved the Court to instruct the jury that the demand was not in time, and that the endorser was not liable for the note.  This instruction was refused, and the defendant brought the judgment into this Court by writ of error. The judgment, on great deliberation, was affirmed.
In this case, the custom of the Bank was known to the parties to the note. But the question arose afterwards, in a case in which the custom was not known to the parties. Mills vs. The Bank of the United States, 11 Wheat. 430, was a suit brought by the Bank against the plaintiff in error, and others, on a note endorsed by him, and negotiated in the office of discount and deposit of the Bank of the United States, which was protested, for non-payment, on the day of the last day of grace.
It was proved at the trial, that this was according to the usage of that Bank. The counsel for the defendant moved the Court to instruct the jury that this usage could not bind the endorser, unless he had personal knowledge of it, at the time he endorsed the note. The Court refused to give the instruction, and the jury found a verdict for the Bank, on which judgment was rendered. That judgment was brought before this Court, and affirmed. The Court said, that "when a note is made payable or negotiable at a Bank, whose invariable usage it is to demand payment, and give notice on the fourth day of grace, the parties are bound by that usage, whether they have a personal knowledge of it, or not."
In the case of such a note, the parties are presumed, by implication, to agree to be governed by the usage of the Bank, at which they have chosen to make the security itself negotiable.
These cases decide that under consideration, unless there be a distinction between a bill and a note made negotiable in a particular bank. In the case of a note negotiable in a particular bank, the parties may very fairly be presumed to be acquainted with the usage of that bank. As the decisions which have been cited, depend upon that presumption, it will become necessary to inquire, how far the same presumption may be justified in the case of a bill drawn on a person residing in a place where this usage is established.
If a promissory note were made in the city of Washington, payable to a person residing in the same place, though not purporting to be payable and negotiable in bank, it would very probably be placed in a bank for collection. It is a common *34 practice, and the parties would contemplate such an event as probable, when the note was executed.
The same reason seems to exist for applying the usage of the bank, to such a note, as to one expressly made payable and negotiable in bank. Such notes are frequently discounted, and certainly the person who discounts them, or places them in bank for collection, stands in precisely the same relation to the bank, as respects its usage, as if the notes purported on their face to be negotiable in bank. The maker of a negotiable paper, in such a case, may fairly be presumed to be acquainted with the customary law which governs that paper, at his place of residence.
In the case at bar, however, the bill was drawn at Alexandria, on a person residing at Washington. Does this circumstance vary the law of the case?
The usage by which questions of this sort are governed, is different in different places. It varies from three to thirty days  and the usage of the place on which the bill is drawn, or where payment is to be demanded, uniformly regulates the number of days of grace which must be allowed. This bill being drawn on a person residing in Washington, and being protested for non-payment in the same place, is, according to the law merchant, to be governed by the usage of Washington. Could this be questioned, still the holder of the bill, who placed it, by his agent, in the Bank of Washington for collection, who has made that bank his agent, without special instructions, submits his bill to their established usage. The cases, then, which have been cited, are not different in principle from this  and payment having been demanded, according to the invariable usage of the Lank, was demanded in time. If then the objections to the conduct of the Bank were confined to the demand of payment, and protest for non-payment, the first instruction asked by the defendants in the Circuit Court, ought to have been given. But they are not confined to the demand of payment, and to the protest for non-payment. They extend to the steps taken by the Bank, concerning the presentation of the bill.
The second instruction asked for, is in terms which are in some degree equivocal. It may imply, either that the recourse against the drawer of the bill was not lost, or that if lost, that circumstance would not entitle the plaintiff to recover against the Bank; as its decision is not essential to the cause, it will be passed over.
The third is more specific. The Court is asked to say, that the failure of the Bank to give notice to the drawer, that the drawee was not found at home, when called upon to accept *35 the bill, is not such negligence as discharged the drawer from his liability, and entitles the plaintiff to recover.
The question suggested by this prayer, is one on which no decision is found in the Books. It depends on analogy, so far as it is to be decided by adjudged cases. Such a bill need not be presented; but if presented, and acceptance be refused, it is dishonoured, and notice must be given. Had the Bank taken no step whatever to obtain an acceptance, no violation of duty would, according to these decisions, have been committed.  Can any unsuccessful attempt to do that which the law does not require, place the agent in the same situation that he would have stood in, had the drawee been found, and had positively refused acceptance? Absence from home, with a failure to make provision for payment when a bill becomes due, is a failure to pay; but absence from home when the holder of a bill or his agent offers it for acceptance, is in no respect culpable. Had the drawee received advice of the bill, he could not have not known, that it would be presented for acceptance, because the law did not require it, and is consequently not blameable for his absence, when the officers of the Bank came to present it for acceptance. Had the bill, under such circumstances, been protested for non-acceptance, and returned, the drawer might not have been liable for it.
The bill, then, on general principles, ought not to have been protested; and the absence of the drawee, ought not to be considered as equivalent to his refusal to accept. It might have been a prudent precaution, to have given information that the bill was not accepted, because the drawer had not been found, but we cannot say, that the omission would subject the agent to loss, unless such was the special usage of this bank.
4. The fourth prayer is for an instruction to the jury, that, if they believe, from the evidence, that the defendants conformed to their former usage, in regard to such bills, in calling on the drawee for acceptance, (the said drawee being from home,) and not noting the same as dishonoured, and giving notice thereof to the parties on the said bill, then, their failure to treat the said bill as dishonoured, and to give notice accordingly, of non-acceptance, did not discharge the drawer thereof, from his liability to the plaintiff.
The Court has already indicated the opinion, that this omission to treat the bill as dishonoured, in consequence of not finding the drawee at home, if the usage of the bank was not to notice such a circumstance, did not discharge the drawer; consequently, this instruction ought to have been given, unless it should be supposed foreign to the case in which it was asked. In a suit brought by the holder against the bank, the *36 Court was not bound to declare the law as between the holder and the drawer, unless the liability of the bank was determined, by the liability of the drawer. Although in the general, the one question depends on the other, yet, it may not be universally so. The bank was the agent of the holder, not of the drawer, and might consequently so act, as to discharge the drawer, without becoming liable to its principal. In this case, however, as the agent received on specific instructions, but was left to act according to the law merchant; a course of proceeding which did not discharge the drawer, could not render the agent liable to the principal. This prayer was, therefore, essentially the same with that which preceded it, with this difference. The third prays an instruction, whatever might be the usage of the bank; the fourth prays essentially the same instruction, provided the conduct of the bank conformed to its usage. This instruction, therefore, ought to have been given, as prayed. Upon a review of the whole case, the Court is of opinion, that, if the bank acted in conformity with its established usage, in not noting the bill, and giving notice thereof, when the ineffectual attempt was made to present it for acceptance, this action could not be supported. With respect to this usage, the testimony is contradictory, and ought to have been submitted to the jury, in conformity with the last prayer made by the counsel for the bank. The Court erred, in not giving this instruction, as prayed. The judgment, therefore, is to be reversed, and the case remanded for a new trial.
This cause came on, &c., on consideration whereof,  This Court is of opinion, that the Circuit Court erred, in refusing to instruct the jury, that if they believed that the defendants conformed to their former usage, in regard to such bills as the one in question, in calling on the drawee for acceptance, (the said drawee being from home,) and not noting the same as dishonoured, and giving notice thereof to the parties on the said bill, then, their failure to treat the said bill as dishonoured, and to give notice accordingly, of non-acceptance, did not discharge the drawer thereof from his liability to the plaintiffs.  It is therefore considered by the Court, that the said judgment be reversed and annulled, and that the cause be remanded to the said Circuit Court, with directions to award a venire facias de novo, and to proceed therein according to law.