## Lewis *v.* The Planters' Bank.

Where a bill of exchange, not made payable at any particular place fell into the hands of a bank, and neither the acceptor nor the endorser knew that the bill was in the bank, and no custom was proved in regard to the negotiation of such paper, from the existence of which they might conclude the bill would be placed in bank: *Held*, in an action on the bill against the endorser, demand of payment at the counter of the bank is not sufficient to charge the endorser.

ERROR to the circuit court of Wilkinson county.

The plaintiff in error was sued as endorser of a bill of exchange for 1000 dollars, payable generally, and not at any particular place. The bill fell into the hands of the defendants in error, and at maturity, a demand of payment was made at the counter of the bank, which being refused, the bill was protested for non payment, and notice given to the endorser.

At the trial, the counsel for the plaintiffs below, requested the court to charge the jury, that it was not necessary to show a personal demand of the acceptor, if it appeared in evidence, that the bill was placed in the office of the Planters' Bank at Woodville, for collection, and that the general custom of the bank was well established to demand payment of all such bills at the counter, and that this custom was understood by the acceptor: that it was not necessary that the endorser should be acquainted with the custom, and that such a demand on the third day of grace was sufficient to hold the endorser, who was regularly notified, whether he had notice of the manner of demand or not. The court gave the instruction as requested, and the defendant's counsel excepted. The sufficiency of the demand is the only question raised.

It did not appear that there was any proof upon the trial below, as to the custom in relation to the collection of such paper through the banks, and the manner of demanding payment for the same.

[Lewis *v.* The Planters' Bank.]

Grayson, for plaintiff in error.

This suit was instituted upon a bill of exchange, drawn by John G. Poindexter, in favor of John S. Lewis, the appellant, for 1000 dollars, upon George L. Poindexter, Woodville, Miss.— dated at Natchez.

The bill was endorsed by Lewis, and went into the possession of the plaintiffs, as a branch of the Planters' Bank, located at Woodville.

The bill is payable generally—no place of payment being designated.

When the draft fell due, the bank at Woodville, being the holder, instead of demanding payment of the drawee, who had accepted the bill, performed the idle ceremony of presenting the same at its counter, (though the acceptor lived in the same town where the bank was situated,) and the acceptor not having provided funds there for the payment, had the same protested, and then instituted suit against the endorser, who is the appellant, to recover the amount of the protested bill.

There is no evidence in the record, showing that either the acceptor or endorser knew at the time the bill fell due, that it was in the possession of the plaintiffs, or that it had been placed with them for collection.

Under these circumstances, the plaintiffs ask the court to instruct the jury " that it is not necessary to show a personal demand of payment of the acceptor, if it appear in evidence that said bill was placed in the office of the Planters' Bank at Woodville for collection, and that the general *custom* of said bank was well established to demand payment of all such bills at the counter of said office, and that this custom was understood by said acceptor, G. L. Poindexter, that it is not necessary in such case, that the endorser was acquainted with said custom of the bank, that in such case, a demand at said office by the notary on the third day of grace, was a sufficient demand." This instruction the court gave, and the jury rendered a verdict for the plaintiffs.

The principle assumed in the opinion of the court, challenges attention by its novelty at least. But it is insisted that the principle is erroneous, for the following reasons:

[Lewis *v.* The Planters' Bank.]

Although it may be true, that in some cases, the custom or mode of doing business at a particular bank, known to those who do business there, and cognisant of the custom, may be obligatory upon such, yet the rule has never been extended so far as to apply the obligatory force of the custom, to a person who has never dealt at, or had any transactions with the bank, and who, in the particular instance now in question, for aught that appears, was not apprised that the bill of exchange, on which he is sued, was in the possession of the bank, through whose particular custom or usage, a responsibility that he never dreamed of, is attempted to be imposed upon him.

Taking it to be law, that a particular usage of a bank may bind those in the habit of dealing at such bank, and in a transaction to be had with, or at the bank, surely, it cannot be maintained that such usage shall embrace and affect transactions which the parties never presumed the bank would have any thing to do with. The instructions, however, which the court below were asked to give, and which were given, repudiate the idea, that it was necessary that the endorser, Lewis, should have had notice that the bank was the holder of the bill, or that he should have had notice of the custom. Now, admit it to be true, that the endorser had notice of the custom, it does not follow, as the instructions suppose, that he should be bound by it in the case now under consideration, in the absence of any evidence that he had notice that the bank was the holder of the bill. The court below assumes it to be law, that the endorser is responsible upon the facts recited in the bill of exceptions. The novel position, therefore, is maintained, that a bank is permitted to purchase up a bill of exchange, and hold an endorser on it responsible, though a demand of payment may not have been made of the acceptor, but at its own counter, where the bill was not made payable —and this, upon the principle, that it is the usage of the bank to make such demand, although such usage may not be known to the endorser, and although he may not know that the bank had become the holder of the bill.

The case of Wilcox & Fearn *v.* A. G. M'Nutt, 2 How. Rep. 776, is referred to as illustrating the principle in relation to the usage of banks.

[Lewis *v.* The Planters' Bank.]

Boyd, for defendant in error.

On the merits, the instructions given were correct. 4 Mass. Rep. 252. The usage of a bank known to the endorser, by presumptive evidence, and varying the general rule as to demand, notice, &c., was held to bind him. The note in that case was not payable at a bank. In 6 Mass. Rep. 450, a similar principle as to a similar note was held. In 9 *Ibid.* 115, the same doctrine is applied to a note made payable in bank.

The rule was a little extended in 12 Mass. Rep. 172. There the note was payable at the state bank. All the parties lived in town, the maker alone had agreed to acknowledge a demand at a shop; the endorser was held bound. It was not considered of any consequence to the endorser, in what peculiar manner, the ceremony of dishonoring the note was conducted. There should be a demand, but the manner (not the time) interests the maker alone. All the endorser can require, is a notice of the dishonor in time to withdraw his funds; that is the whole object of the notice.

In 9 Pick. 420, the endorser was presumed to know the usage of the bank. The note sued on was not made payable in bank, but only endorsed to it. And it was decided that any usage varying the general law must be strictly followed, and then would be obligatory, and knowledge of it was presumed. Also, 9 Wheaton, 584, on a similar note.

In 11 Wheaton, 431, the actual knowledge of the particular usage was not considered of any consequence, so the usage was established. Here, the note was made for discount.

A still greater extension of the liability of decisions in the early Massachusetts Reports, was authorised in 1 Peters' Rep. 33, 34. It was there held, that in case of a bill like that sued on in the present action, the same rule was to be adopted as to demand and note, as on a promissory note payable in a particular bank, and whether the usage is actually known or not. The principle, in 11 Wheaton, 430, is commented on, and re-decided.

In the case before the court, if the acceptor of the bill sued on was cognisant of the custom of the bank in reference to demand, whatever amounted to a demand according to that usage was a demand on him. The averment in the declaration is of a per-

[Lewis *v.* The Planters' Bank.]

sonal demand, and that averment would be answered literally and fully, by any ceremony agreed upon between the acceptor and holder if performed at the time refused by law. He would be estopped by his agreement, and the usage known to him, was an agreement. A notice in time, on such demand and refusal, binds the endorser.

The true test of a usage is laid down in 9 Wheaton, 585-6-9. It does not depend upon time, and must have a beginning. The instructions given by the judge, in the case before the court, were exceedingly guarded on this head, and the most material part of them by consent of both parties. In such case of usage, no exception will lie. 9 Wheaton, 581; 7 *Ibid.* 453; 9 Cowen. The jury were told by the court below, taking the instructions together, that the custom to be a good one, and binding on the endorser, must be such that he (the defendant) was presumed to know it. There was no error in this, even under the restricted decisions in the first of the cases referred to from the Massachusetts Reports. But the opinion of the court in 1 Peters' Reports, puts the question of notice on its true ground, and would have warranted the charge asked for by the plaintiffs, without the restrictions placed on it by the judge, at the request of the defendant.

The opinion of the court below is clearly sustained by authority, and ought not to be reversed.

Mr. Chief Justice SHARKEY delivered the opinion of the court.

As a general rule, when no place of payment is specified in a note or bill, a personal demand, or something equivalent, must be made of the maker or acceptor, in order to hold the endorser liable. Courts, however, have gone great lengths in deciding that this personal demand is rendered unnecessary by the particular customs of banks, at which the paper may be negotiated or deposited for collection; not on the ground that the custom of a bank changes the law, but that he who knows of the existence of such custom, and endorses or negotiates paper at the bank when it exists, impliedly agrees to be bound by it, and thereby waives the conditions imposed by law. 4 Mass Rep. 251; 1 Peters, 32-3-4. When the custom of the banks is known to the contracting parties,

[Lewis *v.* The Planters' Bank.]

no injury is likely to result; and when a note or bill is made for the purpose of negotiating in bank, it is but right that the parties should be bound by such customs as prevail in the bank, whether they know of their existence or not, as they may be presumed to have agreed to be governed by bank usages. Thus far the authorities go; but, in all the adjudications on this subject, I find none that bear out the instructions given to the full extent, in direct terms; and certainly they have gone far enough in substituting customs for the law of the contract. After a careful review of many of the leading cases, I·do not think the reasoning in them can be extended so far as to justify the instruction. I apprehend when a note is not made payable in bank, and the parties have no knowledge that it was placed there for collection, that a demand at the counter would not be sufficient to charge an endorser who was ignorant of the custom' of the bank in making a demand.

In the case of Jones *v.* Fales, 4 Mass. Rep. 251, the reason for letting in bank usage is as clearly given as it is in any of the cases. It is said that the endorser is not liable unless the condition upon which the law implies that he agreed to pay, be performed; but being a condition implied by law for the benefit of the endorser, like all other conditions, it may be waived by him for whose benefit it was made.· The evidence of the general custom of the banks in Boston in giving notice on notes payable with grace, and lodged in bank for collection, and that the defendant was conversant of the usage, and had conformed to it in other instances, was held to be proper evidence of the defendant's agreement or waiver, to be submitted to a jury.· The court did not intimate an opinion that the endorser would ·be ·liable without a knowledge of the custom. The principle·established by this decision is, that an endorser may either expressly or impliedly waive the personal demand required by law.· ·

The same principle is reiterated in 6 Mass. Rep. 450. In that case the defendants knew· and had conformed to the usage. All the subsequent cases in Massachusetts, so far as I have examined them, are founded on this principle, but none of them ·have gone beyond it.

In the case of Mills *v.* The·Bank of the United States, the note was ·made payable in bank, and the reasoning adopted in that

[Lewis *v.* The Planters' Bank.]

case cannot be applied in this.   The court said " that when a note is made payable or negotiable at a bank, whose invariable usage it is to demand payment, and give notice on the fourth day of grace, the parties are bound by that usage, whether they have a personal knowledge of it or not.   In the case of such a note, the parties are presumed by implication to agree to be governed by the usage of the bank at which they have chosen to make the security itself negotiable."   This does not vary the principle contained in the Massachusetts cases, but on the contrary maintains it.   The liability of the endorser, is placed on the ground of an agreement to be governed by the usage of the bank, which agreement is implied or presumed, from the act of making the note payable in bank, where the usage prevails.   The making of a note payable in bank is in itself evidence of the agreement, but, there is nothing in the case last cited to justify the position that when a note is not payable in bank and the endorser has no knowledge of the custom that he would be bound by it.

The case of the Bank of Washington *v.* Triplet and Neale, 1 Peters, 25, goes a step further, but evidently maintains the same principle, vary in nothing but as to the evidence of the agreement. The bill sued on, was not made payable in bank, nor there negotiated, but placed in the Bank of Washington for collection.   The reasoning of the court shows on what ground the custom of the bank was sustained.   Chief Justice Marshall said: " If a promissory note were made in the city of Washington, payable to a person residing in the same place, though not purporting to be payable and negotiable in bank, it would very probably be placed in a bank for collection.   It is a common practice, and the parties would contemplate such an event as probable, when the note was executed.   The same reason seems to exist for applying the usage of the bank to such a note, as to one expressly made negotiable and payable in bank.   Such notes are frequently discounted, and certainly the person who discounts them, or places them in bank for collection, stands in precisely the same relation to the bank, as respects its usage, as if the notes purported on their face to be negotiable in bank.   The maker of negotiable paper in such a case, may fairly be presumed to be acquainted with the customary law which governs that paper at his place of residence."

[Lewis *v.* The Planters' Bank.]

Nothing is said in the case, to dispense with a knowledge of the custom, or to hold an endorser without such knowledge liable. It only establishes a rule of evidence, and it is this, that he, who makes negotiable paper in a place where a particular usage exists in relation to such paper, is presumed to have contemplated the operation of such usage, when the paper was made. It presumes the knowledge of the party from his act. And this rule is predicated on the supposition that it is in the custom of the place, to put all paper in bank for collection, whether it be payable there or not. The question here decided will not still apply to the case before us, unless we undertake to decide that it is the practice, when the bill was made payable, to place such bills in bank for collection, and that, therefore, the parties may be presumed to have contracted in reference to that practice. This we cannot do. We cannot and do not know any thing of the practice in such cases. If such a one is followed, it ought to have been proved. If we are to speak of our knowledge of the practice, we can only say that in this country, it is not usual to place paper in bank for collection, which is neither negotiated nor made payable there.

If I am right then in the position that the cases cited sustain these usages on the ground of an express or implied waiver or agreement of the parties to the contract, and that they turn mainly on what is evidence of the waiver or agreement, the charge of the court in the case before us cannot be sustained. The agreement presupposes an act or assent of the party agreeing. In this case, there was no express agreement, and the only question is, was there an implied one? An implied agreement, is one which is raised by operation of law, but still some act or assent of the party is presupposed, on which the law raises the inference. Can it be said, that the law will presume an agreement in this case, that the endorser would waive his right to have a personal demand made, by submitting to the custom of a bank, of which custom he was wholly ignorant, and did not even know that the bill was placed in bank for collection; and when he could not anticipate that it would be placed there when it was made? Certainly there is nothing in the case from which the law will presume an agreement, and if he be liable at all, it cannot be on the ground of waiver, and the reasoning in the authorities must

[Lewis *v*. The Planters' Bank].

be regarded as having no just foundation. The contract of an endorser is conditional, that he will pay, if the maker does not, on demand made at maturity, and notice to the endorser of the non-payment. By law the demand must be personal, where no place of payment is designated. Can it be, that any bank into whose hands paper may come, may evade this law, by pursuing their own particular customs, of which the endorser knows nothing, and thus destroy the condition of the contract? If so, the law has uselessly imposed the condition. The customs of banks would take the place of the law. The law requires a demand for the benefit of the endorser; it is wholly immaterial as to the maker or acceptor, whether it be made or not. It does not vary his liability. The endorser has a right to insist upon the performance of the conditions which the law has raised in his favor, and cannot be deprived of their benefit, without his assent, either expressly or impliedly given.

A singular feature in this case is, that neither the acceptor, nor endorser knew that the bill was in bank, and no custom is proved in regard to the negotiation of paper, from the existence of which they might conclude that it would be placed there. It is, therefore, a place of payment, made without the agency or consent, either directly or indirectly, of either of the parties, and in this particular, it goes far beyond any of the cases. All that appeared on this subject was, that the acceptor was acquainted with the custom of the bank; but there was nothing from which he was bound reasonably to infer that the bill would be placed in bank for collection. In this it differs also from those cases in which the maker has been permitted by memorandum at the bottom, or in the margin of the note, to designate a place of payment, after the note has been made, as was done in the case of the Bank of America *v*. Woodworth, 18 Johns. Rep. 315.

The judgment must be reversed, the cause remanded, and a *venire de novo* awarded.