JAMES ADAMS, PLAINTIFF IN ERROR, *v*. PHILIP OTTERBACK.

Where a note was given in the District of Columbia on the 11th of March, payable sixty days after date, and notice of its non-payment was given to the indorser on the 15th of May, (being Monday,) the notice was not in time.

Although evidence was given that since 1846, the bank which was the holder of the note, had changed the preëxisting custom, and had held the paper until the fourth day of grace, giving notice to the indorser on Monday, when the note fell due on Sunday. This was not sufficient to establish an usage.

An usage, to be binding, must be general, as to place, and not confined to a particular bank, and, in order to be obligatory must have been acquiesced in, and become notorious.

THIS case was brought up by writ of error from the Circuit Court of the United States for the District of Columbia, holden in and for the county of Washington.

It was an action of assumpsit brought by Adams, the plaintiff in error, upon a promissory note drawn by Haw, Yellott & Company, in favor of Philip Otterback, the defendant in error, and discounted by the Bank of Washington. The proceeds of the discounted note were paid by the bank upon the check of Otterback. After the note had been protested for non-payment, and notice of protest had been given to the indorser, it was assigned to Adams, the plaintiff in error.

On the trial of the cause the plaintiff gave in evidence the note, the handwriting of drawers and indorser being admitted, and proved that the note was discounted on the 11th of March, 1848, the day of its date, and the proceeds paid on defendant's check; that the note (which was payable at sixty days) was unpaid at maturity, and was delivered to George Sweeny, a notary, on Monday, the 15th day of May, 1848, after 3 o'clock, who on that day demanded payment, which was refused, and thereupon, on the same day, he delivered a notice for the indorser at his dwelling.

The plaintiff also gave in evidence by the teller and bookkeeper of the bank, that after the decision of the case of Cookendorfer *v*. Preston, and about two years prior to the date of the note in controversy, the bank changed the custom which had previously prevailed in regard to the demand and protest of negotiable discounted notes held by the bank, and that in all cases of discount they had up to that time held the paper until the fourth day of grace; and by the change, if that fourth day of grace happened to fall on Sunday, it became the custom of the bank to retain them till Monday, and on that day deliver the same to the notary to demand payment and give notice. And on cross-examination it appeared that only four instances of practice under this custom were shown.

Adams v. Otterback.

Upon this state of facts the court instructed the jury that if they should " find the whole evidence aforesaid to be true, yet the plaintiff has not thereby shown that he has used due diligence in demanding payment, and giving notice of the non-payment of said note, and is not entitled to recover in this action.

To this instruction the plaintiff excepted, and the case was now to be argued upon it.

It was argued by *Mr. Lawrence*, for the plaintiff in error, and *Mr. Bradley*, for the defendant in error.

*Mr. Lawrence*, for the plaintiff in error, contended that the instruction was erroneous. It is difficult to understand the ground upon which the instruction was bottomed; whether, in the opinion of the court, the plaintiff could not recover admitting the custom to be proved, because the plaintiffs had not conformed to it; or whether, in the opinion of the court, the custom itself was not, as a fact, proved by the evidence; or whether, lastly, it was not legally competent for the bank to change an ancient custom and introduce a new one. Upon one or other of these grounds the instruction must have been given, and upon either of them it was erroneous.

1. That the court may instruct the jury that the plaintiff cannot recover against the indorser of a promissory note if they believe the evidence, and that evidence proves a particular custom, and at the same time proves that the plaintiff did not conform to that custom, we are not called upon to deny, because such is not the case here. The evidence clearly proves that the demand of payment and the notice of protest were in conformity with the altered usage, if that altered usage is itself established.

2. If the meaning of the instruction was that the custom itself, as alleged, was not proved by the evidence in the cause, then it was erroneous, because it was an invasion of the province of the jury. There was certainly evidence tending to prove that the old custom had been changed, and the new custom introduced. Whether that evidence did prove it, was for the jury to determine. It was not one of those cases in which a demurrer to evidence would lie, upon the ground that the quality of the evidence was not such as is required by law, whatever might be its tendency. For, in all the cases in this court, it has been held that it was competent to prove the custom of a bank by parol evidence. Renner v. Bank of Columbia, 9 Wheat. 587, 588; Mills v. Bank of United States, 11 Wheat. 431.

Nor was the instruction proper upon the ground that the

number of instances which had occurred within the two years since th. adoption of the new custom were not sufficient in number to prove a new custom, or to bring it to the knowledge of the defendant. Because, if it be admitted that a custom may be changed, there must be a time when the change must commence, and there must be a first and single instance of the new custom; and in the case of Mills *v.* Bank of United States, and Bank of Washington *v.* Triplett and Neale, 1 Pet. 25, this court has already decided that it is not necessary that a custom should have actually been brought to the notice of an indorser. But on the contrary, it is the duty of the indorser to acquaint himself, by inquiry, with the custom of the bank with which he deals.

3. It was competent for the bank to change its custom whenever in its discretion the interests of the bank should require it. There is no inexorable rule of law which binds down such an institution to one eternal routine of business, notwithstanding the changing interests of commerce may demand a modification. On the contrary, this court has held that which the sound principles of commercial business dictate, viz. that a bank may change its custom, and may prove that change in the same manner as they may prove the original custom. Cookendorfer *v.* Preston, 4 How. 326.

The plaintiff in error would therefore submit, that if it is competent for a bank to change its usages; if there is evidence in the case tending to prove such change; if there is evidence in the case tending to show that the bank had made demand and given notice in accordance with such altered usage, then the instruction, that if the jury find the whole evidence of the plaintiff to be true, yet he was not entitled to recover, was erroneous.

*Mr. Bradley* for defendant in error.

This case turns upon the right of a bank, without notice, public or otherwise, given to the persons dealing with it in the way of discounting negotiable paper, to change the usage and custom of the bank in respect to the demand of payment of the notes, and giving notice to the indorsers, so as to bind the indorsers by such change. In other words, to maintain the plaintiff's case, it must appear that when a man procures a note to be discounted by a bank, by that act alone, the usage and custom of that bank are incorporated into the contract of discount, and become a constituent part of that contract between the parties to that note and the bank. And this is the case, although the parties never before had dealt with that bank; the paper was not made payable or negotiable at the bank; the usage and custom of that bank differed, in that respect, from those of all the other

banks in the same community; and this particular usage and custom had been introduced by that bank within a short period, without notice, public or otherwise, and was unknown to the parties to the note ; and before such change, that bank had conformed to the usage and custom of the other banks in that community ; or, in other words still, a party applying to a bank to discount for him negotiable paper, is bound to inquire, if he does not know, the special usage of that particular bank in respect to negotiable paper discounted by it, at the time of such discount, and he is not to rely either on the known and established usage and custom of all the other banks in the same community, or upon the particular usage of that particular bank up to the day before such discount, but he must ascertain if any change has been made in such usage, as he will be bound by it whether he knows it or not.

It is conceded by the defendant in error —

That a custom or usage of a bank, brought home to the knowledge of a person dealing with the bank, in respect to the discount of negotiable paper, enters into the contract, becomes a constituent part of it, and must have its due weight in the exposition of it. Bank of Columbia *v*. Magruder, 6 Har. & J. 180.

This knowledge may be proved directly, or may be implied from the dealings of the parties.

It may be inferred from persons dealing with the bank, which has a well-established usage. Lincoln & Kennebec Bank *v*. Page, 9 Mass. 155 ; Same *v*. Hammatt, Ib. 159 ; Smith *v*. Whiting, 12 Mass. 8.

From the parties being accustomed to transact business of that kind with the bank. Blanchard *v*. Hilliard, 11 Mass. 88 ; Jones *v*. Fales, 4 Mass. 252 ; Widgery *v*. Munroe, 6 Mass. 450 ; Bank of Columbia *v*. Fitzhugh, 1 Har. & G. 239 ; Hartford Bank *v*. Stedman, 3 Conn. 489 ; City Bank *v*. Cutter, 3 Pick. 414 ; Bank of Columbia *v*. Magruder, 6 H. & J. 172 ; Whitwell *v*. Johnson, 17 Mass. 452.

From the negotiable paper being made payable or negotiable at the particular bank. In addition to the cases cited, see also Yeaton *v*. The Bank of Alexandria, 5 Cranch, 52 ; Renner *v*. The Bank of Columbia, 9 Wheat. 585 ; Brent's Executor *v*. The Bank of the Metropolis, 1 Pet. 93 ; Mills *v*. Bank of United States, 11 Wheat. 431.

But it is contended by the defendant :

I. In all cases the usage to bind the parties must be a known, established, and invariable usage. See all the cases cited.

II. It is not strictly a rule of judicial decision, but is compounded of law and fact, and is admissible in evidence to show the contract of the parties, and their assent to such usage. See

11 Mass. 88; 4 Mass. 252; 6 Mass. 450; 1 Har. & Gill, 239; 3 Conn. 489; and the cases in this court above cited, and those cited by plaintiff in error.

III. A usage may be changed; Cookendorfer *v.* Preston, 4 How. 317. But the knowledge of that change must be brought home to the party to be affected by it. This may be in any of the modes already mentioned, or in some other mode from which it may justly be inferred that the party knew or ought to have known it.

IV. In this case it is admitted that, by the usage of the bank, existing up to the spring of 1846, the demand and notice set up in this action would have been insufficient. It is admitted that no notice, public or otherwise, was given of the alleged change; it is not shown how the change was made; and there are but three instances of practice under the alleged change, all of which were in the spring of 1848.

It is not pretended that defendant ever had any dealings with the bank prior to this time; the note was not made payable or negotiable at the bank; and the court is now asked to go, for the first time, the length of saying that every man to whose credit a note is discounted by a bank, is bound by all the usages of that bank in regard to demand and notice of that note, although he has never dealt with the bank before, and the note was not made negotiable or payable there, and there is no fact or circumstance in the case from which it can legally be inferred that he knew the said usage.

It will not do to ay he received the avails. If the law binds him it binds all the intermediate parties between him and the maker. Nor does it follow, that because the avails ostensibly went to his credit, that he derived any benefit from them. He was the payee, and last indorser. They must have gone to his credit. But the money was on the same day paid to bearer on his check. It may well be inferred that it was paid to the makers; that the note was made for their benefit, to be discounted wherever they could get it done, having no reference to this particular bank, or it would have been made payable and negotiable there. The check also is for " proceeds of " this note, discounted this day for $800, the usual form in which the proceeds of a discounted note would pass to the credit of the maker.

Nor will it do to say that it was discounted on his credit. He then stood in the condition of a surety. As surety he is not to be bound beyond the terms of his contract. His contract was made with reference to the existing and well-known commercial usage, and the banking usage of the community in which he lived. It is a general note, so to speak — not a note payable or negotiable at any particular bank, or having any reference to

any particular or special usage. His contract bound him to the general usage on its face, and as surety he is entitled to all the benefits of that general usage. It was, that if the maker did not pay at maturity he would, provided demand was made on the maker, and notice given to him as indorser, according to the general usage.

The plaintiff sets up another contract, not apparent on the face of the paper, nor to be inferred from any dealings, nor exhibited in any knowledge brought home expressly or by any recognized implication, to the defendant.

It is submitted that the Circuit Court was right in giving the instruction.

Mr. Justice McLEAN delivered the opinion of the Court.

This was a writ of error to the Circuit Court of the United States for the District of Columbia.

This action was brought on a promissory note dated the 11th March, 1848, given by George W. Yellett, Henry Haw, and William B. Scott, in the name of Haw, Yellett & Co., in which they promised to pay to Philip Otterback, Esquire, or order, sixty days after date, the sum of eight hundred dollars, for value received; which note, before it became due, was assigned to the plaintiff.

The general issue was pleaded, and the cause was tried by a jury.

The note was discounted by the Bank of Washington, the proceeds of which were drawn by the defendant.

The following facts appear in the bill of exceptions. The note was unpaid at maturity, and on Monday, the 15th of May, after three o'clock of that day, was delivered by the bank to George Sweeny, the notary employed by said bank to demand payment thereof, and for protest if not paid. The notary stated that he demanded payment at the United States Hotel, and was answered, "neither of the proprietors are within, and it cannot be paid." On the same day notice was left at the dwelling of the indorser.

The witness further stated, that he had been teller of the bank since the year 1836, and that after the decision of the case of Cookendorfer *v.* Preston, by the Supreme Court, in 1846, the said bank changed the usage and custom which had theretofore prevailed therein, in regard to the demand and protest of negotiable paper held and discounted by it; and in all cases of discount they thereafter held the paper until the fourth day of grace; and if the said fourth day fell on Sunday, it was under the said change the custom of the bank to retain it until Monday, and on that day to deliver the same to the notary to

Adams v. Otterback.

demand payment and give notice; and Sylvester B. Bowman, bookkeeper of the bank, states that since the decision of said case, the usage had been changed by the bank, as above stated.

No notice of such change had been given, so far as the witness knew; and it was further stated, that four cases had occurred in which the notes becoming due on Sunday, the notice was given on Monday. On the evidence, this court instructed the jury that the plaintiff had not used due diligence in demanding payment and giving notice of non-payment to the indorser — to which the plaintiff excepted.

This court, by several decisions, have sanctioned the usages of banks in this district, in making demand and giving notice of non-payment, varying from the law merchant. Renner v. Bank of Columbia, 9 Wheat. 587–588; Mills v. Bank of the United States, 11 Wheat. 430; and in some instances where, in this respect, notes left in a bank for collection, have been placed on a different footing from notes discounted. Cookendorfer v. Preston, 4 Howard, 324.

But these usages had been of long standing and of general notoriety. Rights had grown up under them which could not be disregarded without injury to commercial transactions. In the case before us the usage relied on, and under which notice to the indorser was given, had been adopted by the bank two years before the note in question was discounted, but it seems only four cases had occurred under it. No public notice was given at the time of its adoption, and no presumption can arise from the facts stated, that the indorser could have had notice of the usage.

It is said, if a bank may establish a usage, it may change it; and that there must be a beginning of acts under it. This may be admitted, but it does not follow that a usage is obligatory from the time of its adoption. To give it the force of law, it requires an acquiescence and a notoriety, from which an inference may be drawn that it is known to the public, and especially to those who do business with the bank. It is unnecessary to consider whether a usage adopted might acquire force from public notices generally circulated. No such notice was given in this case.

But to constitute a usage, it must apply to a place, rather than to a particular bank. It must be the rule of all the banks of the place, or it cannot, consistently, be called a usage. If every bank could establish its own usage, the confusion and uncertainty would greatly exceed any local convenience resulting from the arrangement.

In this country and in England, three days of grace are given by the general commercial law, and the day the note matures

46 *

is not one of them.   In Hamburg, the day the bill falls due makes one of the days of grace.   Notice must be given to the drawer or indorser on the day the dishonor takes place, or on the next day.   If notice be given through the post-office, it must be forwarded by the first mail after the demand of payment.   If the note fall due on Sunday, under the general law, the demand of payment must be made on Saturday.

The usage is not proved in this case.   Four instances, in the course of two years, are insufficient to establish a usage.   Such a rule would, in effect, abolish the commercial law, in regard to demand and notice on promissory notes and bills of exchange. There is ground ' doubt whether any deviation from the general law has not been productive of inconvenience.

No explanation is given, why the demand of payment on the note was made at the United States Hotel, in this city.   Such a demand would seem to be insufficient.

We are, therefore, of the opinion, that there was no error in the instructions of the court to the jury; the judgment of the Circuit Court is therefore affirmed.

### Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Columbia, holden in and for the County of Washington, and was argued by counsel.   On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, affirmed, with costs.