MERCHANTS' NAT. BANK OF HOUSTON v. DORCHESTER et al.

(Court of Civil Appeals of Texas. March 17, 1911. Rehearing Denied April 6, 1911.)

1. BANKS AND BANKING (§ 156*)—COLLECTION—DUTY OF COLLECTING BANK—DILIGENCE.

The relation of principal and agent was created by the deposit of a check with a bank for collection requiring it to exercise due diligence in presenting the check for collection.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 539–546; Dec. Dig. § 156.*]

2. BANKS AND BANKING (§ 171*) — COLLECTION—DILIGENCE—TIME OF PRESENTMENT.

In absence of special circumstances, the presentment of a check for payment by a collecting bank on the day after it is deposited for collection is a sufficient exercise of diligence.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 597–618; Dec. Dig. § 171.*]

3. BANKS AND BANKING (§ 161*) — COLLECTION — RELATING BANK AND DEPOSITOR — USAGE.

One depositing a check in a bank for collection was bound by any reasonable usage which he knew existed among the banks of the city, such as the custom of collecting through the clearing house.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 555, 557; Dec. Dig. § 161.*]

4. BANKS AND BANKING (§ 171*) — COLLECTION — FAILURE TO COLLECT — NEGLIGENCE IN SENDING PAPER DIRECTLY TO DEBTOR.

When plaintiff deposited a check with defendant bank for collection, he knew of a usage among the banks of collecting checks through the clearing house, and that, when checks were deposited too late in the day to permit their being cleared that day, they were held by the collection bank and presented at the clearing house the next day. The check was deposited with defendant too late to go to the clearing house on that day, and was held until the next day pursuant to the custom, but, when it went to the clearing house and was presented to the drawee bank on the next day, that bank had closed its doors. Held, that defendant was not negligent in presenting the check for payment to the clearing house, instead of directly to the drawee bank, having done so with plaintiff's implied consent, and hence was not liable for the amount of the check.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 597–618; Dec. Dig. § 171.*]

5. BANKS AND BANKING (§ 163*) — COLLECTION — COLLECTIONS THROUGH CLEARING HOUSE—SETTLEMENT—EXCHANGE OF CHECK.

Plaintiff deposited her check with defendant bank for collection from the drawee bank, knowing that it was the custom of the banks to collect through the clearing house, and that the check must be presented at the clearing house by 2:30 p. m. in order to go through that day. Under the clearing house rules, all checks drawn in favor of a bank were balanced against those drawn against it, and, if the latter exceeded the former, the bank became indebted to the clearing house to the extent of the excess, and the accounts between the banks were settled by the clearing house drawing checks upon the debtor bank in favor of the creditor bank on that day. Defendant's indebtedness to the clearing house on the day that the check in question was presented exceeded that of the drawee bank by a considerable amount. The check, which was drawn on the drawee bank by the clearing house on the day plaintiff's check was presented for payment, was refused payment; the bank having become insolvent. Held, that the exchange of checks at the clearing house pursuant to the rules was not a settlement between defendant and the drawee bank, so as to amount to a payment of the check deposited with defendant for collection.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 567–570; Dec. Dig. § 163.*]

6. APPEAL AND ERROR (§ 879*)—REVIEW—CROSS-ASSIGNMENTS.

Where plaintiff did not appeal from the judgment denying recovery against one of defendants, he cannot, upon the appeal of another defendant, cross-assign error in denying him a recovery against the first-mentioned defendant.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3581–3583; Dec. Dig. § 879.*]

7. BANKS AND BANKING (§ 171*)—CHECKS—FAILURE TO PRESENT.

Plaintiff received defendant's check in payment of goods at 8 o'clock a. m. on October

16th and deposited it, for its own convenience, with a bank for collection, knowing of the usage of the banks to collect checks through the clearing house, and the check was presented to the drawee bank after 3 o'clock p. m. on the 17th after going through the clearing house, when that bank had become insolvent, but it would have been paid had it been presented before 3 o'clock. Defendant had no knowledge of the method of collecting checks through the clearing house, and did not know that it would not be presented directly to the drawee bank. *Held*, that the neglect of plaintiff or its agent, the collecting bank, to present the check for collection on the 17th within banking hours released defendant from liability thereon; it not having impliedly consented to the presentment of the check through the clearing house, instead of directly to the drawee.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 597–618; Dec. Dig. § 171.*]

Appeal from District Court, Harris County; Norman G. Kittrell, Judge.

Action by Chester B. Dorchester, receiver, against the Merchants' National Bank of Houston, Tex., and another. From a judgment for plaintiff against the defendant named, it appeals. Reversed and rendered.

Lane, Wolters & Storey and Wm. A. Vinson, for appellant. Andrews, Ball & Streetman, for appellees.

McMEANS, J. The following statement of the case made by appellant in its brief, and which is approved by the other parties to this appeal, is adopted:

On September 14, 1908, Chester B. Dorchester, as receiver for the Waters-Pierce Oil Company, instituted suit in the district court of Harris county against the Texas Lamp & Oil Company to recover the sum of $1,563.33 on a verified account. On the 17th day of April, 1909, the defendant filed its first amended original answer, admitting the purchase of the goods, as alleged in the plaintiff's petition, and further alleging that the amount claimed remained unpaid until on October 15, 1907, when it drew its check payable to the order of the plaintiff in the sum of $1,563.33 on the bank of T. W. House, in the city of Houston, and delivered it to the plaintiff on said date; that the defendant on said date, and on each and every day thereafter, and continuously up to the closing of said bank at 3 o'clock p. m. October 17, 1907, had on deposit in said bank funds to the amount of or more than $1,563.33, which were subject to withdrawal on the order of the defendant, and that if said check so drawn and delivered to the plaintiff had been presented at any time, or within a reasonable time after its delivery to the plaintiff, it would have been paid; that the plaintiff received said check on the 15th day of October, 1907, or at an early hour on October 16, 1907, and long before the failure of the T. W. House bank, and retained said check, and did not return or offer to return the same, and did not refuse to accept the

same prior to the failure of said T. W. House bank; that after the close of said bank at 3 o'clock p. m. October 17, 1907, the bank of T. W. House failed and became insolvent, and on application of creditors was adjudged a bankrupt by the District Court of the United States for the Southern District of Texas. Defendant also alleged that plaintiff received said check on the morning of October 16, 1907, and did not present the same for payment during that day, although it had ample opportunity to have done so during business hours; that thereafter, on or about October 17, 1907, the plaintiff deposited said check in the Merchants' National Bank of Houston, a bank situated next door to the bank of T. W. House, and separated therefrom by a partition or wall, and that said Merchants' National Bank failed to present said check or to return it to the defendant within a reasonable time, and did not present it for payment at the bank of T. W. House before the closing of business hours at 3 o'clock p. m. October 17, 1907, and thereafter, on that day, the bank of T. W. House failed and became insolvent, and that the failure of the plaintiff and the said Merchants' National Bank to present said check for payment within a reasonable time, or to return the same to the defendant until the said bank of T. W. House had failed, had damaged the defendant in the sum of $1,563.33.

Upon the coming in of the first amended original answer of the defendant Texas Lamp & Oil Company, the plaintiff Chester B. Dorchester, receiver, by supplemental petition, impleaded the Merchants' National Bank, a national banking corporation having its place of business in the city of Houston, Tex., alleging substantially that on the morning of October 16, 1907, he received by mail from the Texas Lamp & Oil Company the latter's check for the sum of $1,563.33, drawn on T. W. House, banker, payable to the order of Waters-Pierce Oil Company; that on that morning he also received a large number of checks from other parties, and as soon as the mail received was opened and the checks, including the check in question, were separated from the remaining portion of the mail, in the ordinary course of plaintiff's business, said checks were listed upon the books of plaintiff, and the proper and usual entries made on said books, and all of said checks, including the one in question, were, as soon as practicable, placed in the hands of plaintiff's messenger, who went with said checks to the place of business of the Merchants' National Bank for the purpose of depositing them with said bank; that the check in question was deposited with the Merchants' National Bank at about 1:30 p. m. October 17, 1907, and that the same was deposited by plaintiff in the regular course of his business, as soon as it was practicable

to do so; that the said Merchants' National Bank gave credit to the plaintiff in his pass book for the sum of $10,045.36, which included the check in question; that the plaintiff's place of business was located many blocks distant from the place of business of both the Merchants' National Bank and the T. W. House bank; that neither of said banks were easily accessible to said place of business, and plaintiff had in his employ a messenger whose duties were to each day carry to and deposit in the said Merchants' National Bank all checks received on that day by plaintiff, and that said messenger used a bicycle for that purpose; that, by reason of the great number of checks received by the plaintiff, it was impracticable for him to visit each bank in person, and that it was his custom to regularly and promptly deposit all checks received by him with the Merchants' National Bank, with which he was at that time doing business, and thereupon it became the duty of the Merchants' National Bank to promptly and diligently present the check in question for payment, and to collect the amount thereof; that the Merchants' National Bank at that time adjoined the bank of T. W. House, and that same could have been presented by said Merchants' National Bank for payment, and could have been collected by the latter, either before the close of business hours on October 15, 1907, or before the close of business hours on the day following; that said check was in fact presented by the said Merchants' Bank to said T. W. House, banker, before the close of business hours on October 17, 1907, and was in fact paid by said T. W. House, banker, to said Merchants' National Bank, either in cash or by the said T. W. House, banker, offsetting against the same checks which he held drawn on the said Merchants' National Bank or otherwise. It was further alleged that on the morning of October 18, 1907, the plaintiff was advised by the Merchants' National Bank that the check in question was uncollectible, and that, in accordance with the custom existing between the plaintiff and said bank for the plaintiff to forward to said bank a remittance to cover such checks as had been by said bank credited to plaintiff's account and were uncollectible, plaintiff, upon being so advised that the check in question was uncollectible, and relying upon such advice, and in ignorance of the true facts, forwarded to said bank his draft for the sum of $1,563.33 for the purpose of offsetting the credit given by said bank to the plaintiff at the time of the deposit of the check in question, which check was applied by said bank for that purpose, and that, therefore, the said Merchants' National Bank became liable to the plaintiff in the sum of $1,563.33, together with interest thereon.

The Merchants' National Bank of Houston, having been thus impleaded by the plaintiff, filed its original answer on April 17, 1909, in which it made the following allegations among others: "This defendant avers that if it ever had or handled the check described in plaintiff's petition, it took the same in due course of business, and that in handling the same it handled it in the ordinary, customary, and usual manner in which such matters are handled by banks doing business in the city of Houston, state of Texas, and elsewhere; that if it ever handled said check, it used due diligence and all care necessary and proper and such as is customary in an effort to collect the same; that it was not negligent in any particular or in any manner or in any way in its efforts to collect said draft; that, if it ever handled said draft, it presented the same promptly for payment in the usual and customary manner in which such items are handled by the banks of Houston, and in such prompt, usual, and customary manner as plaintiff knew the said check would be handled by said bank when the same was deposited with it for collection; that, if it ever handled said check, the same, when presented promptly and properly and through the proper channels, was dishonored, not paid and returned to this defendant and immediately by it reported dishonored and returned to the plaintiff, and this defendant denies that it has been guilty of any negligence, neglect, or carelessness whatever in connection with the handling of said check or its presentation for payment, and denies that it is liable to the plaintiff in any sum whatever in this case, and of this it puts itself upon the country."

Robert J. Eckhardt, having been appointed receiver of the Waters-Pierce Oil Company by the district court of Travis county, Tex., and having qualified as such, was substituted as plaintiff in lieu of his predecessor, Chester B. Dorchester, and succeeded to all of the rights of Chester B. Dorchester, receiver, herein. On the 22d day of January, 1910, the cause came on for trial before the court without a jury and judgment was rendered in effect that the plaintiff take nothing by his suit against the Texas Lamp & Oil Company, and said company go hence without day and recover its costs, but that the plaintiff have and recover from the Merchants' National Bank of Houston the sum of $1,563.33, with interest from October 17, 1907, at the rate of 6 per cent. per annum, less the sum of $626.72, with interest at the rate of 6 per cent. per annum on $235.02 thereof from March 5, 1908, on $156.68 thereof from June 5, 1908, on $78.34 thereof from December 10, 1908, and $156.68 thereof from June 15, 1909. It was also decreed that the payment of the judgment by the defendant Merchants' National Bank should operate to vest in the said bank the full title to the claim of the defendant Texas Lamp & Oil Company, amounting to $1,563.33, proved up in favor of the receiver of the Waters-Pierce Oil Company, in the estate of T. W. House,

in bankruptcy, being administered in the District Court of the United States for the Southern District of Texas at Houston, and that all payments made on said claim by said bankruptcy court should be credited on said judgment.

From this judgment, the defendant Merchants' National Bank has appealed.

The court upon proper request filed his findings of fact, which are not excepted to, and which we deem best to set out in full:

"(1) That the defendant Texas Lamp & Oil Company was indebted as alleged by petitioner, upon open account, in the sum of $1,563.33, which indebtedness is not denied.

"(2) That on the 15th day of October, 1907, the Texas Lamp & Oil Company drew its check upon the bank of T. W. House, and sent the said check by mail to its creditor, Dorchester, as receiver of the Waters-Pierce Oil Company, which check was received by said Dorchester, or his agent, in due course of mail on the morning of October 16, 1907, at about the hour of 8 o'clock. I find that the Texas Lamp & Oil Company, or its manager or owner, who drew the check, did business with T. W. House, and that he had received canceled checks that had gone through the clearing house, which had marked on them 'Paid by Clearing House' or 'Paid through the Clearing House,' and that the present Texas Lamp & Oil Company had been doing business here about six or seven years. I do not find that said manager or owner had any other knowledge of the methods of doing business than were revealed by those checks.

"(3) The said agent of the receiver in charge of the business in Houston took the said check in connection with something like 119 other checks, aggregating $10,045.36, and sent them by messenger, in the ordinary course of business, to the Merchants' National Bank, which is interpleaded in this action.

"(4) I find that the weight of the testimony is to the effect that the messenger of the Waters-Pierce Oil Company (which term will be used instead of using the name of Dorchester) did not reach the bank until some time after 2:30 o'clock of the 16th, or about 2:45 or 2:55 on that day, and did not reach it in time for the checks deposited on that day to get into the clearing house, it being necessary under the rules of the clearing house for all checks to be there at the clearing point by 2:45 p. m. of each business day, that being the hour at which the clearing house met each day, except on Saturdays.

"(5) The Merchants' National Bank therefore held the checks, but duly sent them in to the clearing house at the proper hour on the 17th, at 2:45 p. m., and, when the checks were received, they were all sorted out, as is customary there, and all the checks that were drawn on T. W. House were delivered to some messenger or clerk of his, and sent over to the bank of T. W. House for the purpose of having the signature verified and the indorsements examined by those of his employés charged with that duty. I find the weight of the evidence to show that this check did not get to the bank of T. W. House till after 3 p. m., when it was closed for business.

"(6) The Merchants' National Bank was a debtor of the clearing house on that day to the extent of something like $114,000, and T. W. House was debtor bank to the extent of something in excess of $21,000. The method of operation of the clearing house seems to be that all the checks drawn in favor of any bank were balanced against those drawn against it, and, if those drawn against it are in excess of those drawn in its favor, it becomes a debtor to the clearing house to that extent, and the manager of the clearing house draws checks upon the debtor banks in favor of the banks who are credit banks on that day, and thus the accounts are settled between them.

"(7) Upon that day, October 17, 1907, the balances were so struck and checks were drawn on the Merchants' National Bank in favor of other banks to the extent of its indebtedness, and a check to the extent of twenty-one thousand and odd dollars was drawn against the bank of T. W. House, which, when presented, was refused payment, T. W. House having at the close of business on that day acknowledged himself insolvent and made an assignment, and he was afterwards adjudged a bankrupt.

"(8) It seems, so far as I can deduce from the testimony, that the clearing house had no rules or regulations in its by-laws or book of rules providing for any such contingency as the failure of one of its members, so, after the failure of Mr. House was announced, there was an assemblage called together of the officers of all other banks belonging to the clearing house, ten in number, excluding Mr. House, and it was decided to have another clearance and rebalance the books and exclude and eliminate all checks drawn in favor of or against T. W. House, which was done.

"(9) I find that, in anticipation of the payment of the check by Mr. House when it should be presented through the clearing house, the Merchants' National Bank marked on it in the usual way 'Paid through the Clearing House, October 17, 1907,' and in that form it went to the clearing house.

"(10) When that check and all others drawn on T. W. House were dishonored and refused payment, the Merchants' National Bank notified the Waters-Pierce Oil Company of that fact, and that company sent the Merchants' National Bank a check for $1,563.33 to balance the credit it had received by reason of the deposit of the check drawn by the defendant Texas Lamp & Oil Company in its, the Waters-Pierce Oil Company's, favor.

"(11) I find from the testimony of the paying teller of T. W. House, a man of unquestioned veracity, that, if the check drawn by the defendant Texas Lamp & Oil Company on T. W. House in favor of the receiver of the Waters-Pierce Oil Company had been presented to him within business hours on the 17th day of October, 1907, it would have been paid, because the drawers had funds to their credit sufficient to pay it, and the bank had sufficient money wherewith to meet it.

"(12) Unless the facts above recited of the sending of the check to the clearing house, and the action concerning it explained above was a presentation within the meaning of the law, there never was any presentation of the check at the office counter of T. W. House with a request for payment of the funds it called for before 3 o'clock on the 17th of October, 1907.

"(13) When the receiver of the Waters-Pierce Oil Company sent his check to offset the credit he had received, he had no actual notice of what had been done with the other check, or what course it had taken, further than he was informed that payment had been refused, but I find he or his agents knew that the course the check would take would be through the clearing house.

"(14) It seems that the clearing house is a voluntary association of all the banks in the city of Houston organized and operated for their convenience and to expedite business by an exchange of checks at a certain hour each day, instead of each bank sending to all other banks all the checks drawn on them, and that its organization as such is composed of all the banks in the city.

"(15) I find that it is the custom of business houses to deposit their checks in the banks with which they do business, and that customarily the banks make their collections through the clearing house, and that in Houston it is generally known among those dealing with banks that deposits must be in by 2:30 p. m. The custom of all the banks in Houston that belong to the clearing house also was to make collections of checks drawn against the members of the clearing house through the clearing house. It is not shown that there was any agreement to that effect in the organization of the clearing house, but such was the custom and usage, and it seems that each bank which belonged to the clearing house also had a clerk, or one in some capacity, who attended to the business of delivering items of deposits to the clearing house for action, but such member had no authority, as I conclude, to pass upon the validity of checks or decide whether they were good in the sense that there were funds to meet them."

By its first assignment of error appellant complains that "the court erred in rendering judgment in favor of the plaintiff Chester B. Dorchester, receiver, against this defendant, for the reason (1) that this defendant, in accordance with the usages and customs of business, and as contemplated by the plaintiff and his agent at the time of depositing said check for collection, presented the same for payment through the clearing house in the city of Houston as soon as it was possible for it to do so after said check was so deposited, and such presentation of such check through the clearing house was due presentation thereof for payment, as required by law; (2) that if such presentation of such check for payment was not due presentation thereof, as required by law, plaintiff could not recover against this defendant, for that this defendant handled said check in the manner contemplated by the plaintiff at the time same was deposited, and this defendant cannot therefore be held liable to the plaintiff in endeavoring to collect said check in a manner authorized and contemplated by the plaintiff and acquiesced in by him in long course of business dealings with this defendant."

In its first proposition, it contends that "the Merchants' National Bank having with due diligence presented said check for payment to the House bank, through the clearing house, and the evidence having shown that Dorchester knew and contemplated at the time he deposited said check that it would be presented to the House bank for payment through the clearing house, according to the usual custom of the business, the loss which ensued on account of the failure of the House bank must fall on the principal (Dorchester), and not on the agent (Merchants' National Bank)."

[1] When Dorchester, receiver, deposited with the defendant bank a check drawn on the bank of T. W. House, the relation of principal and agent was thereby created, and the agent rested under the duty of exercising due diligence in making presentation of it for collection. Bank v. Triplett, 1 Pet. 30, 7 L. Ed. 37; 1 Morse on Banks and Banking, §§ 214, 219.

[2] It is well settled that presentment of a check for payment by a collecting bank the day after it is deposited for collection is timely and the exercise of due diligence. O'Brien v. Smith, 1 Black, 99, 17 L. Ed. 64; 1 Morse on Banks and Banking, 240; Kershaw v. Ladd, 34 Or. 375, 56 Pac. 402, 44 L. R. A. 236. But it has been held that the "rule giving to the bank the whole of the day following its receipt of the check is liable to be materially qualified through various causes. The time may be shortened or extended either (1) by express instructions given by the depositor, or an express understanding had between him and the bank, in reference to the particular transaction, or (2) by the uniform course of dealing previously pursued between himself and the bank in the conduct of similar business, or (3) by the known usage of the individual

bank in such matters, provided the usage is one which the courts can properly sustain, or (4) by the general usage of banks and the custom of the banking business in the city or town where the bank is situated." 1 Morse on Banks and Banking, § 242.

The question that we are now called upon to decide is whether the presentment of the check in question in the manner it was presented—that is, through the clearing house—was the exercise of such diligence in collection as is required by law of the agent, the collecting bank. If so, then the judgment rendered in the court below was clearly wrong. Bank v. Triplett, supra. In addition to the fact conclusion of the trial court to the effect that it was the custom for all banks in the city of Houston to collect checks held by them drawn on any of the others through the clearing house, we find from the facts in the record that this custom had prevailed for about 19 years, and had become a fixed custom and usage among all the banks in the city of Houston, and was generally known there, and especially known to Dorchester at and before the time he deposited the check in question. He also knew the hour of the clearing house meetings, and knew that, unless a check was deposited with the bank before 2:30 o'clock in the afternoon, it would not be presented on the day on which it was deposited, but that the same would be carried over by the bank until the next day, and then be presented at the clearing house in the usual and customary way.

[3] In selecting the bank as his collecting agent, thus availing himself of its facilities for doing the desired service, he was bound by any reasonable usage which he knew prevailed among the banks in the city of Houston. 5 Cyc. 504; Kleekamp v. Meyer, 5 Mo. App. 444; Farmers' Bank & Trust Co. v. Newland, 97 Ky. 464, 31 S. W. 38; Adams v. Otterback, 15 How. 545, 14 L. Ed. 805; Washington Bank v. Triplett, 1 Pet. 32, 7 L. Ed. 37; 1 Morse on Banks and Banking, §§ 9, 220, 221, 222, 223. In Farmers' Bank & Trust Co. v. Newland, supra, it is held that where one delivers a certificate of deposit to a bank to be collected from a bank in another place, without any inquiry as to the methods of collection, there is an implied understanding that the established usage in making collections will be followed; and if the bank to which it is delivered, acting accordingly and in the exercise of due care, mails the certificate to the payor bank, and receives the latter's check on a bank in a third place, it was not liable to the owner of the certificate if the payor bank becomes insolvent before presentation of the check. The court quotes with approval section 221, 1 Morse on Banks and Banking, as follows: "Knowledge of the usage, either express or implied, must, it has been said, be brought home to the parties who are to be bound by

it. But other cases of high authority declare that the usage of the bank in collections will bind the persons dealing with it in this business, whether such usage be known to them or not; and this is certainly the correct rule. Indeed, the opposing cases can be easily reconciled by the link which appears to be suggested by one of them. The fact that one deals with the bank without taking the trouble to inquire as to its system will raise the implication that he already knew and is satisfied with that system. It is clear that, if a person hand over a note to a bank for collection without any species of remark as to the course to be pursued, the bank is not bound to thrust upon him a statement of its intended course, and retain him till the whole theory has been expounded to him, when his conduct unmistakably shows that either he already knows it, or else he does not desire to know it. Either he knows and approves it, or he voluntarily trusts to the wisdom of the bank at his deliberately announced risk of its efficiency. In such a case the bank has not only the right to assume, but it is even positively bound to assume, that his desire is that the ordinary and established usage be pursued. An unordered deviation from that usage, though the usage were unknown to him, would lay the bank open to his suit for damages, and the court must, as has been already shown, rule for him as a matter of law that the pursuance of a custom was an implied item of the contract. It is clear, then, that he could not plead ignorance of it in order to lay foundation of a suit against the bank for acting according to it. The knowledge on his part would be implied conclusively."

We need not go to the length of the authority quoted, for in this case it is shown that Dorchester had actual knowledge of the usage. It has been stated that, "except as limited by special instructions, the known usages and customs of the particular business for which an agent is engaged enter into and form a part of his authority and duty, and he will be liable for losses due to a failure to act according to such usages and customs, and on the other hand, if he does act in accordance therewith, he will not, in the absence of any instructions to the contrary, be liable for any loss resulting." 31 Cyc. 1455. See, also, as bearing upon the question under discussion, Kershaw v. Ladd, 34 Or. 375, 56 Pac. 402, 44 L. R. A. 236; First National Bank of Shreveport v. City National Bank, recently decided by this court.[1]

[4] The foregoing authorities justify us in holding that when the receiver deposited the check in question with appellant bank at a time when he knew it was too late for it to pass through the clearing house that day, and when, as found by the trial court, he knew that the course the check would take would

---

[1] Rehearing pending.

be through the clearing house, and when the undisputed proof shows that by the usage of all the banks in the city of Houston all checks held by either upon the others were settled by a process of exchange through the clearing house, and that it was the general custom, when checks were deposited too late in the day to admit of their going to the clearing house, they were held and presented at the clearing house the next day, and that this usage was observed by appellant bank in reference to the check in question, that no negligence on the part of the bank was shown, and therefore there was no liability on the part of appellant to pay to the receiver the amount for which it was drawn. Negligence cannot be imputed to the bank if it acted in relation to the check as it was contemplated between the parties that it would act at the time the check was deposited. In other words, Dorchester knowing that the course the check would take would be through the clearing house, and knowing the hour of the meetings of the clearing house, and knowing that, if the check was not deposited with the bank on October 16th in time for it to reach the clearing house that day, it would be held over until the next day and then be passed through the clearing house, and if, as the court finds, the check was deposited by Dorchester too late on the 16th to go to the clearing house that day, he cannot now complain that the action the bank took and which he knew it would take, and which action was, under the circumstances of this case, with his implied consent and the implied agreement between them, was negligence in presenting the check at the clearing house, and in not presenting it at the office counter of the House bank. In the absence of a usage, such as was shown in this case, it would doubtless have been negligence on the part of the bank to have delayed making direct presentment to the House bank until after business hours on the 17th, but the parties in view of the knowledge possessed by both of the usage impliedly contracted that the rule as to presentment to the drawee bank should be substituted by the presentment at the clearing house. While this may not have been such a presentment as the law, in the absence of such usage, required to be made in order that the collecting bank might escape liability, it was nevertheless a substitute for such presentment which the depositor had impliedly agreed to, and, when thus made, absolved the bank from liability for negligence in not making presentment direct. Kleekamp v. Meyer, supra.

This conclusion obviates the necessity upon our part of determining whether a presentment of a check at the clearing house generally is a presentment for payment to the drawee. However, the following authorities seem to hold that it is. In 1 Morse on Banks and Banking, § 354, it is said: "That the system of presentment through a clearing house is a legal presentment for payment to the bank on which the check is drawn— a matter which it would seem could never be doubted—has been specifically ruled in England." Again, the same author (section 243) says: "But the bank must always make the presentment directly to the drawee, and cannot send it through other banks and agents of any description; presentment through the clearing house being for this purpose a presentment direct to the drawee." In 6 Am. & Eng. Ency. of Law, p. 117, the author, following the rule laid down by Professor Morse, says: "There would seem no reason to doubt that a presentment through the clearing house of a check or draft drawn on a member is a valid presentment for payment"—citing Reynolds v. Chettle, 2 Campb. 596, where it is held that "where a bill of exchange is accepted payable at a certain banker's that a presentment of the bill for payment to the banker's clerks at the clearing house is sufficient." It is not necessary, we think, for us to say more than that the presentment to the clearing house as made in this case was a substitute impliedly agreed upon by the parties for a direct presentment to the drawee bank.

[5] We think under the facts of this case there is no merit in the contention of the appellee, receiver, that the exchange of checks at the clearing house, as shown to have been made in this case, was such a settlement between the appellant bank and the bank of T. W. House as amounted to a payment, and that this settlement could not be set aside in the absence of clearing house rules providing for the annulling of such settlements. Merchants' Nat. Bank v. Nat. Eagle Bank, 101 Mass. 281, 100 Am. Dec. 120.

Appellee Dorchester, receiver, has presented the following cross-assignment of error: "The court erred in rendering judgment that this appellee take nothing by this suit against the Texas Lamp & Oil Company, and that the said Texas Lamp & Oil Company go hence without day, for that, the undisputed evidence being that this appellee received the check in question on the 16th day of October, 1907, it had until the close of business hours on the 17th day of October, 1907, within which to present said check for payment, and said check having been deposited by it in the Merchants' National Bank of Houston, Tex., on the 16th day of October, 1907, and said bank having presented said check for payment through the clearing house before the close of business hours on October 17, 1907, and payment thereof having been refused, this appellee was entitled to judgment for its admitted debt."

[6] There was no appeal by Dorchester, receiver, from the judgment denying him a recovery against the Texas Lamp & Oil Company, and under the rule heretofore laid

down by this court the cross-assignment is not entitled to consideration. Halsell v. Neal, 23 Tex. Civ. App. 26, 56 S. W. 137; Railway v. Skinner, 4 Tex. Civ. App. 661, 23 S. W. 1001; De La Vega v. League, 2 Tex. Civ. App. 252, 21 S. W. 565. But, should we consider the assignment, we would be constrained to hold that it presents no ground for relief as against the Texas Lamp & Oil Company.

[7] As before shown, the Merchants' National Bank is not liable to the plaintiff for the amount of the check drawn in his favor on the House bank by the Texas Lamp & Oil Company, because the bank in making presentation of it for collection followed the ordinary method and custom prevailing in Houston, which were known to plaintiff and contemplated and implied in the contract between the bank and Dorchester at the time he deposited and the bank accepted the check for collection, and the bank was absolved from liability, not because it presented the check to the drawee bank for collection within the time prescribed by law—that is, within banking hours on the day next succeeding that upon which the check was deposited—but because the presentment being made in accordance with the usage and customs then existing and known to the depositor was a substitute for a presentment direct to the drawee, and the bank acted with reasonable diligence; and, there being no negligence of the bank in that regard, there could be no liability against it. But under the facts of this case can the same rule be applied to Dorchester, the principal, which applies to the bank, the agent? We think not. Dorchester rested under the duty to the Texas Lamp & Oil Company to make presentment of the check to the drawee before the close of banking hours on October 17th, and any failure to present the check before that time, whether due to neglect of Dorchester himself, or any agent or agency selected by him, if it resulted in prejudice to the Texas Lamp & Oil Company, absolved it from any further liability for the debt for which it was given in payment, unless such neglect can be excused by some custom or usage binding upon it. It is stated in the findings of fact, and not questioned here, that, if the check had been presented to the drawee bank at any time before three o'clock in the afternoon of October 17th, it would have been paid, and that the check never in fact reached the bank until after 3 o'clock, at which time the bank had become insolvent. It is further stated that the Texas Lamp & Oil Company had no knowledge of the methods of doing business through the clearing house further than was revealed to it by certain checks issued by it being returned which had marked on them "Paid by Clearing House" or "Paid through the Clearing House." In other words, the evidence fails to disclose the existence of any such usage or custom binding upon the Texas Lamp & Oil Company that excused the failure of Dorchester or his agent to make presentment of the check to the drawee for payment within the time required by law. Dorchester then being negligent in this regard, it would be unjust to the Texas Lamp & Oil Company to be required to sustain the loss due to no fault of its own, but to the neglect of its creditor in failing to use that diligence in collection the debtor had the right to exact, and which the law imposed. There were no facts proven to show that there was any necessity for Dorchester to deposit the check in a bank for collection, but the evidence is clear that in doing so he did it for his own convenience, thereby making use of the facilities of the bank for that purpose. Nor can it be inferred that the Texas Lamp & Oil Company impliedly contracted or even contemplated that the check in question would not be presented by Dorchester direct to the drawee, nor that he expected, or assented, to the check being presented at the clearing house as a substitute for presentment direct to the drawee. Under such circumstances, it cannot be held that the hazard of failure to make direct presentment to the drawee should be borne by the Texas Lamp & Oil Company.

It appears that the case was fully developed in the court below, and that there is no necessity to remand for another trial. The judgment in favor of the Texas Lamp & Oil Company is undisturbed, and the judgment in favor of the plaintiff, receiver, against the Merchants' National Bank, is reversed and judgment here rendered for the latter, and the claim of the Texas Lamp & Oil Company against the estate of T. W. House in bankruptcy, being administered in the United States District Court for the Southern District of Texas, at Houston, is hereby vested in the appellee, receiver of the Waters-Pierce Oil Company.

Reversed and rendered.